UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRON M., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security,[1] <br><br> Defendant. | Case No. 2:18-cv-09737-KES <br><br> MEMORANDUM OPINION AND ORDER |

# I.
# BACKGROUND

Plaintiff Terron M. ("Plaintiff") stopped working in December 2005. Administrative Record ("AR") 188. He applied for Social Security disability benefits in January 2015, alleging disability commencing December 1, 2014. AR 55. He identified paranoia (which he has had since 1993) and a right "boxer fracture" (i.e., a broken wrist/hand bone) as his disabling impairments. AR 55, 58.

---

[1] Mr. Saul was sworn in as Commissioner of Social Security in June 2019. See https://blog.ssa.gov/social-security-welcomes-its-new-commissioner/. Accordingly, he is substituted for Ms. Berryhill pursuant to Federal Rule of Civil Procedure 25(d).

In March 2015, he identified right arm and hand pain along with mental issues as his disabling conditions. AR 194-201. On March 8, 2017, an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by an attorney, appeared and testified, as did a vocational expert ("VE"). AR 31-44. A supplemental hearing was held on August 16, 2017. AR 45-54. On December 15, 2017, the ALJ issued an unfavorable decision. AR 12-30. The ALJ found that Plaintiff suffered from medically determinable severe impairments consisting of "history of pancreatitis"; "history of 'benign' pancreatic mass"; degenerative joint disease of the right wrist; and a history of substance abuse. AR 17. Despite these impairments, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform a narrowed range of medium work. AR 20.

Based on the RFC analysis and the VE's testimony, the ALJ found that Plaintiff could work perform his past relevant work as a home attendant. AR 24. The ALJ concluded that Plaintiff was not disabled. AR 25.

## II.
## ISSUES PRESENTED

<u>Issue One</u>: Whether the ALJ properly considered the applicability of Listing 5.08.

<u>Issue Two</u>: Whether the ALJ properly considered the opinions of treating physician Naeemah Ghafur in the February 2016 "Medical Opinion Re: Ability to do Work-Related Activities (Physical)" form (the "Medical Opinion Form" at AR 729-31).

(Dkt. 23, Joint Stipulation ["JS"] at 3.)

## III.
## DISCUSSION

A. **ISSUE ONE: Listing 5.08.**

    **1. Steps Two and Three of the Sequential Evaluation Process.**

At step two, ALJs must determine whether the claimant has "a severe

medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 404.1509, or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(ii). Section 404.1509's duration requirement provides that an impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." Id. § 404.1509.

Step three of the sequential evaluation process requires ALJs to consider whether a claimant's severe impairments meet or equal a listed impairment. Id. § 404.1520(a)(4)(iii). Listed impairments are presumed severe enough to preclude gainful work. Id. § 404.1520(d); see 20 C.F.R. Part 404, Subpt. P, App. 1 ("Appendix I" or "the Listings"). If the claimant meets or equals one of the listed impairments, a conclusive presumption of disability applies. Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990).

The listing of impairments in Appendix I "describes for each of the major body systems impairments . . . severe enough to prevent an individual from doing any gainful activity." 20 C.F.R. § 404.1525(a). The Social Security Administration does not consider a claimant's impairment to be one listed in Appendix I solely because it has the diagnosis of a listed impairment. Id. § 404.1525(d). The impairment "must [satisfy] all of the criteria in the listing." Id.. Medical equivalence will be found if the medical findings are "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526.

In determining whether a claimant's impairment equals a listing at step three, the ALJ "must explain adequately his evaluation of alternative tests and the combined effects of the impairments." Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990) (finding error where ALJ stated claimant did not equal a listing without explanation despite presentation of relevant medical evidence). The ALJ, however, is not required to discuss the combined effects of a claimant's

impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence. See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (distinguishing Marcia and determining that the ALJ's failure to consider equivalence was not reversible error because the claimant did not offer any theory, plausible or otherwise, as to how his impairments combined to equal a listing impairment, or any evidence to support such a theory).

While ALJs must discuss and evaluate evidence that supports their step-three conclusion, they need not do so under any specific heading. Id. at 513; see also Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding the ALJ's discussion of equivalence sufficient despite the ALJ's failure to "state what evidence supported the conclusion that appellant's impairments do not meet or exceed the Listing of Impairments," because summary of medical evidence was "an adequate statement of the foundations on which the ultimate factual conclusions are based"). ALJs need not identify which listing(s) they considered so long as their conclusions are supported by substantial evidence. Pedregon v. Colvin, No. 12-0361-JPR, 2013 U.S. Dist. LEXIS 79229, at *39 (C.D. Cal. June 5, 2013).

**2. The ALJ's Step Two and Three Findings.**

The ALJ found that Plaintiff suffered from severe impairments potentially affecting his digestive system, including "a history of 'benign' pancreatic mass" and "a history of pancreatitis." AR 17. His treating records contain multiple references to "chronic pancreatitis" and discuss how a pancreatic mass was pressing on his stomach.[2] AR

---

[2] Plaintiff reported abdominal pain in June 2015. AR 333-34. An abdominal CT scan showed abnormalities including a "mass with calcifications" involving the head of the pancreas. AR 339. In September 2015, Plaintiff was still diagnosed with a "pancreatic mass and chronic abdominal pain," but he reported his pain was "minimal to gone." AR 322, 335. An abdominal CT scan showed

The ALJ considered whether Plaintiff's severe impairments met or equaled "all sections of the Listing of Impairments and, in particular, those sections of the Listing pertaining to the Digestive System and the Musculoskeletal System." AR 20. The ALJ concluded that Plaintiff "does not have a physical impairment or combination of physical impairments that meets or medically equals one of the Listings." Id. Later in her opinion, the ALJ noted, "treatment records do not document continued weight loss …." AR 22. The ALJ supported this note with a detailed chronological summary of treating records from August 2014 through May 2017. AR 22-23.

Based on Plaintiff's reported right hand pain and diagnosis of degenerative joint disease (AR 316), the state agency consultants considered whether he met or equaled Listing 1.02 for joint dysfunction. AR 59, 67. They did not consider Listing 5.08. Id. Plaintiff has not cited anywhere in the AR where he asked the ALJ to consider whether his digestive impairments met or equaled Listing 5.08.

### 3. Analysis of Claimed Error.

On appeal, Plaintiff argues that he satisfies Listing 5.08 addressing weight loss caused by any digestive disorder. (JS at 3.) Listing 5.08 presumes disability in cases of "[w]eight-loss due to any digestive disorder despite continuing treatment as prescribed, with BMI[3] of less than 17.50 calculated on at least two

---

"calcification around the pancreatic head" that "may indicate chronic pancreatitis," but the pancreatic "mass" was "less pronounced" than seen in the earlier June 2015 study. AR 332. In February 2016, a radiology report notes that Plaintiff has a "history of pancreatic cancer" with "chronic pancreatitis." AR 359-60. In October 2015, he underwent an endoscopic retrograde cholangiopancreatography ("ERCP"), a procedure that enables doctors to examine the pancreatic and bile ducts by inserting a lighted, bendable tube through the mouth into the stomach. AR 340. It revealed findings "consistent with chronic pancreatitis." Id.

[3] The formula for body mass index, or BMI, is weight in kilograms divided by height in meters squared. When using English measurements, pounds should be divided by inches squared. This should then be multiplied by 703 to convert from

evaluations at least 60 days apart within a consecutive 6-month period." Appendix I § 5.08.

To support this argument, Plaintiff points to the ALJ's step two findings establishing that he has severe impairments affecting his digestive system.[4] Next, Plaintiff argues that he was "received active and consistent treatment for his digestive impairments in the form of prescription medications and proton pump inhibitor therapy." (JS at 4, citing AR 346, 351, 377, 494.) Finally, Plaintiff points to three physical examinations when he had a BMI less than 17.50:

> During a September 22, 2015 physical examination, Plaintiff was found to have a body mass index (BMI) of 17.00. [AR 665 (noting Plaintiff's height as 5'5" and his weight as 102 lbs).] Shortly thereafter, during a September 30, 2015 examination, Plaintiff's BMI was found to have decreased to 16.31. [AR 640 (noting Plaintiff's height as 5'6" and his weight as 101 lbs).] During a February 18, 2016 examination, Plaintiff was noted to have a BMI of 15.64. [AR 636 (noting Plaintiff's height as 5'5" and his weight as 94 lbs).]

(JS at 4.) The September 22, 2015 examination and the February 18, 2016 examination are more than 60 days apart and fall within a consecutive 6-month period.

The Commissioner contends, "In order to meet the Listing, Plaintiff has to prove that he was below 17.50 BMI consistently for at least a year." (JS at 7.) The Court disagrees. Plaintiff must show that his underlying digestive impairments

---

lbs/inches$^2$ to kg/m$^2$. (JS at 6 n.3, citing Listing 5.00G.2.)

[4] The Court notes some ambiguity in the step two findings. The ALJ described Plaintiff's pancreatic impairments as historical (suggesting Plaintiff did not suffer from them at the time of the hearing) but did not make findings about when he had them. It is unclear what time frame the ALJ considered in finding Plaintiff's pancreatic impairments "severe."

6

lasted for at least a year – a finding usually encompassed in the ALJ's finding of severity at step two. Listing 5.08 only requires weight loss caused by a severe digestive impairment (and shown by a BMI of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 6-month period) despite continuous treatment.

The Commissioner also argues that Plaintiff has not cited to "any specific treatment recommended by his physicians for weight loss," and that this is also a requirement of the listing. (JS at 7.) Again, the Court disagrees. The listing requires treatment of the underlying digestive disorder, not treatment specific to weight loss (which is a symptom of the impairment, not the impairment itself). The Court will not decide if the record reflects "continuing treatment," as the listing requires, but notes that the records cited by Plaintiff show at least that in 2015, Plaintiff was prescribed two anti-inflammatory drugs, Omeprazole (used to treat stomach problems), MiraLAX (to treat constipation), as well as Norco, and in February 2016, he was being treated with Bentyl (used to treat irritable bowel syndrome), Phenergan (used to treat nausea and vomiting), and Albuterol (used to treat bronchospasm). AR 637, 665.

Consequently, the ALJ's step three conclusion lacks substantial evidentiary support.

**4. Remand is the Appropriate Remedy.**

District courts have discretion to remand a case either for additional evidence and findings or to award benefits. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). Courts should only remand for an award of benefits where further administrative proceedings would serve no useful purpose. Id.

Here, further administrative proceedings are required to determine whether Plaintiff was disabled for part of all of his claimed period of disability. On remand, the ALJ should make findings as to when Plaintiff's digestive impairments were "severe" and then consider Plaintiff's evidence concerning the

requirements of Listing 5.08 during the relevant times. If Plaintiff is presumptively disabled as a result of this step-three analysis, then the ALJ may need to consider the impact (if any) of Plaintiff's history of substance abuse. See 20 C.F.R. § 404.1535; Sax v. Colvin, 31 F. Supp. 3d 1156, 1161 (E.D. Wash. 2014) ("However, because substance abuse was at issue, rather than immediately awarding benefits (as would ordinarily be the case for a claimant whose impairments met several of the Listings impairments) . . . , the ALJ was required to conduct the sequential evaluation a second time to consider whether Plaintiff would still be disabled absent substance abuse.").

The ALJ may also consider Plaintiff's other claims of error not addressed by this Court.

## IV.
## CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered REVERSING the decision of the Commissioner and REMANDING for further administrative proceedings consistent with this opinion.

DATED: July 11, 2019

_____
KAREN E. SCOTT
United States Magistrate Judge